## Thomas J. Marshall *vs.* William Harwood.

Points decided in the court below, in favor of the appellant, will not be considered by this court on *his appeal*, when the judgment must be affirmed upon a point decided against him.

A person appointed State Librarian under the present constitution, before he is entitled to the office, must give bond, approved, during the session of the Legislature, by the committees of the Senate and House of Delegates on the Library, as directed by the act of 1847, ch. 53.

Committees have no power to act as such during the recess of the Legislature, unless they are specially authorized to do so.

The acts of 1826, ch. 53, and 1847, ch. 53, so far as they relate to the bond to be given by the Librarian, previous to entering upon the duties of his office, are not repealed by the constitution, and the Governor has no power to approve such bond.

Appeal from the Circuit Court for Anne Arundel county.

This was an application made on the 24th of April 1855, by the appellant, for a *mandamus* to compel the appellee to surrender to the petitioner the office of State Librarian.

The facts as to the *election* of the appellant, are sufficiently stated in the opinion of the court below, and also in the case between the same parties reported in 5 *Md. Rep.*, 423. In support of his *qualification*, the petitioner offered the following certificate:

"*State of Maryland, Sct:* I, T. Watkins Ligon, Governor of the State of Maryland, do hereby certify, that Thomas J. Marshall has this day qualified as State Librarian, by taking, in my presence, the oaths of office required to be taken by the constitution and laws of this State; and that he has also deposited in the executive department his official bond, by me

duly approved. In witness whereof I hereunto subscribe my name, and have caused the great seal of the State of Maryland to be affixed, this 24th day of April, A. D., 1855.

T. WATKINS LIGON.

By the Governor:

*James Revell*, Acting Secretary of State."

It was also *admitted*, that on the 24th of April 1855, said Marshall took the oaths of office, which were administered to him by the Governor, in the form required by the constitution and laws, and on the same day filed in the executive department a bond executed by himself and sureties, which was on the same day approved by the Governor: these admissions were made for the purpose of the motion, to show cause why the writ of mandamus should not issue, but at the same time it was denied by Harwood that the petitioner had duly qualified by taking the oaths of office and giving bond, as required by law. It was further admitted, that Harwood was elected State Librarian on the 23rd of April 1853, and that on the same day he qualified before the Governor, by taking the oaths prescribed by the constitution, and by filing his official bond, which was on that day approved by the Governor, but the *admissibility* of the facts in regard to the qualification of Harwood, was denied by him.

The court below (BREWER, J.,) refused the application, and delivered the following opinion accompanying this refusal:

" The facts as to the election and qualification of the petitioner, are all admitted, and the Court of Appeals have expressly decided on the former application, 5 *Md. Rep.*, 423, that Mr. Harwood was elected for two years from the 23rd April 1853, and that Mr. Marshall was duly elected in anticipation of the expiration of those two years, from which time he was entitled to be qualified and inducted into the office. This is not disputed; and the only question discussed is, whether Mr. Marshall has been duly qualified?

" The *first* objection to the qualification is, that the certificate is not in the proper form, nor by the proper officer; that it should state what oath was taken, and when, to enable the court to judge whether it was a proper one. I think the cer-

tificate is by the proper officer. The 3rd section of the act of 1852, ch. 172, requires the oath to be taken before the Governor, to be preserved in a book to be kept by the Secretary of State. The Governor certifies as to his acts. The Secretary, in keeping the book, is but the clerk of the Governor for that purpose, recording, not what was done by him, but what was done by the Governor. I think the form also sufficient. It is not necessary to set out the oath *verbatim*.

"A *second* objection is, that the oath should be taken within thirty days, according to the 5th section of the act of 1852, ch. 173. That section applies only to the elections, &c., returned to the clerks. The Secretary of State is designated by his title in the 3rd section, not as a clerk. The officers to be qualified before the Governor are left to the provisions of the constitution on that subject. The return or certificate of appointment would be made in that case to the Governor in the Executive Chamber, not in the office of the Secretary of State.

"The *third* objection is, that the bond should be approved by the committees of the Senate and House of Delegates, or in the words of the act of 1847, ch. 53, sec. 1, 'in such sum and with such security as said committees approve.'

"By article 7, sec. 7, of the constitution of 1850, the Librarian is to be elected 'by the joint vote of the two branches of the Legislature, for two years, and until his successor shall be elected and qualify.' 'He shall perform such duties as are now or may hereafter be prescribed by law.' This is the only reference to the Librarian in the whole constitution. The act of 1852, ch. 172, prescribes the mode of taking the constitutional oath, but no subsequent act provides for the taking a bond. The acts of Assembly, however, in reference to the Librarian, which were in force at the adoption of the constitution, by the 3rd article of the bill of rights, if unrepealed, are still in force, and are, moreover, recognized by the 7th section of the constitution before referred to. The 3rd sec. of the act of 1826, ch. 53, authorizes the Executive to appoint a Librarian, prescribes the condition of the bond, and directs that the Librarian, previous to entering on the duties of his office, shall give bond to the State of Maryland in such sum and with such

security as the Executive may deem sufficient, which said bond shall be deposited in the Executive Chamber.

" The next act is that of 1847, ch. 53. This provides, that the appointment of a Librarian shall be made ' by the concurrent vote of the Senate and House of Delegates, who, previous to entering upon the duties of his office, shall give bond to the State of Maryland in such sum and with such security as the committees of the said Senate and House on the Library approve, with condition as prescribed in the third section of the act, to which this is a supplement.' The language of both acts with regard to the approval of the bond by the Executive and the committees, is the same, except that in the *first* ' deem sufficient ' is used, and in the *second* ' approve,' signifying precisely the same; the obligee and the condition being the same in both cases. By the second act, vacancies are to be filled by the Governor, the appointee giving bond with security as aforesaid, to be approved by the Governor. That is to say, a bond to the State, with the condition prescribed in the act of 1826, previous to entering upon the duties of his office. The effect of the act of 1847 upon the act of 1826, would be to leave it in full force, except where it was inconsistent with the act of 1847. The 3rd section of that act does nothing more, except to show the intention of the Legislature, that no more of it should be repealed. The bond, it is to be presumed, is still to be lodged in the Executive Chamber, in conformity with the act of 1847. Can we then say, that upon the proper construction of the constitution and these two acts, with the act of 1852, no bond is to be given by the Librarian? I think not. The constitution prescribes the mode of appointment; the act of 1852 provides for taking the oath; the other two acts prescribe the mode of taking the bond. The act of 1826 directs the bond to be approved by the Governor; the act of 1847, by the committee of both Houses; the provision of the one is unquestionably repealed, both by the 3rd section of the other, and its actual inconsistency with it. I consider that, by these laws, the proper tribunal to approve the bond, is the committees of both Houses of the Legislature on the Library. It was urged by the counsel for the petitioner, that the duty of these committees

Marshall *vs.* Harwood.

was only to fix the amount of the penalty to be given by all future Librarians, and that they should be presumed to have done so. Such could not have been the intention of the law. They are not only to prescribe the penalty, the amount of which might properly depend upon the nature and extent of the duties and obligations of the Librarian, at different periods, but the sufficiency of the sureties, which is meant by ' *security*,' is also to be judged of, and could not be determined once for all, as the parties and their circumstances might be very different at different periods. Has such a bond been given? The certificate of the Governor states, that the petitioner has deposited in the Executive Department his official bond, by me duly approved. What are we to understand by this? That he has filed a bond to the State, with the condition prescribed by law, the penalty and security or sureties of which he approved, negativing any inference or presumption that it was approved by any other tribunal. The bond was properly deposited in the Executive Chamber, but the Governor had no right to approve it. It may be contended that the consequence of this position would be, that if the Legislature should not be in session when the appointee to fill a future vacancy became entitled, in the language of the Court of Appeals, ' to be qualified and inducted into his office,' his bond could not be approved, and he could not be inducted into his office at the time the law gave him a title to it. I do not know that this would be the case. When appointed he had an interest in present to be enjoyed in future. I see no reason why he could not, at that time, give the bond. At the worst, he would have to await the meeting of the Legislature, and the inconvenience would affect him alone, not the public. But perhaps he might have had his bond approved by the committees of the Library when his term commenced. The duties of these committees, probably, do not end with the adjournment of the session; whether, however, he can or cannot, this inconvenience cannot be permitted to change the law.

"It matters not by whom Harwood's bond, or that of any other Librarian, was approved. The court cannot be governed in its construction of the law by that of any other tribunal, es-

pecially when that construction is only to be inferred from the action of such tribunal. The Court of Appeals say, in the case of *The State vs. Wayman,* 2 *G. & J.*, 278, 'We could not think ourselves at liberty to regard the devious course which is said heretofore to have been pursued in relation to the appointment of this officer,' (Register in Chancery.) 'The constitutional grant limits the duration of the office to a certain term, and no irregularities in the proceedings of the appointing power can extend it beyond that period.' The court is of opinion, that no other tribunal than the committees of both Houses of the Legislature can approve the bond of the Librarian. Nor is the act of 1847 merely directory. It provides expressly, that 'previous to entering upon the duties of his office, he shall give bond,' &c.; he has no right to occupy the office until he does, and this court cannot, therefore, command any person in possession to deliver it up to him, and refuses to issue a *mandamus* to the present incumbent, as prayed by the petition."

From this decision the petitioner appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*Alexander B. Hagner* and *William Schley* for the appellant:

1st. The objection on which the learned judge of the court below refused the *mandamus,* presents the question, whether the appellant is bound to show, as part of his title to the office, that he has given bond " in such sum and with security as the committees of the Senate and House on the Library had approved."

The only part of the constitution which refers to the Librarian, is the 7th art., sec. 7. Nothing is there said as to a bond, and nothing in terms as to what shall render him *"qualified."* By implication, something more than mere *election* is undoubtedly *contemplated,* though nothing more is prescribed. It is conceded the appellant was properly *elected,* but it is said he has not *qualified,* and the specific objection is, that he has not

given such a bond as is mentioned in the 1st section of the act of 1847, ch. 53. It is manifest, if such a bond is required as a condition precedent to entering upon the duties of the office, the appellant is not qualified unless he has given such a bond, but if such bond is *not* required, then a person duly elected cannot be said to be a person "not qualified," simply for the reason that he has not given such bond. The word *"quali-fied"* does not naturally or necessarily include the notion of giving bond, much less a bond of a particular kind. We must look to the constitution itself to see in what sense the word is there used, and we find it used in different significations. In art. 4, sec. 20, we have the term *"qualified voters,"* which is explained in art. 1, sec. 1, and bill of rights, art. 5. *In this respect the constitution explains itself.* So it is reasonable to expect that the test or qualification for any office would be expressed in the constitution or bill of rights. Accordingly we find, as a general provision, no other *"qualification"* is required than such oath as the constitution has prescribed, or as the laws of the State may prescribe, and a declaration of belief in the christian religion, &c. *Bill of Rights, art.* 34. Art. 1, sec. 4, prescribes the form of oath to be taken "by every person elected or appointed to any office of profit or trust *under the constitution,* or laws made pursuant thereto, *before* he shall enter upon the duties of such office." Now our position is, that as Mr. Marshall was duly elected, and has taken the oath prescribed by the constitution, he is both "elected and quali-fied," and in legal possession of the office of State Librarian, and is entitled to the actual possession thereof.

It seems to us, that where the term is *fully explained* by the constitution itself, and where it is carefully provided that he shall take a certain oath *before he shall enter* upon the duties of his office, it is a reasonable exposition of the instrument *in a case where nothing more is required in terms,* that nothing more is required in fact. This view is greatly strengthened by the provisions of the constitution in other particulars. Art. 4, sec. 19, relating to justices of the peace and constables, pro-vides for their election, and that they shall hold their offices for two years, "*and until their successors in office are elected and*

*qualified*," yet justices of the peace were never required to *give bond.* Art. 4, sec. 20, relating to sheriffs, expressly requires them to *give bond* every year, and provides that "*no sheriff shall be qualified to act before the same be given.*" Here, in addition to the *general* qualification, a *special* one is required. So in relation to the Comptroller and Treasurer, (*Art. 6, sec. 1,*) and the Lottery Commissioner, *art. 7, sec. 4.* And we here ask, why did not the constitution, in the case of the State Librarian, prescribe a bond in like manner, if it was intended that he should not be deemed "*qualified*" to enter upon the duties of his office until he had given bond? The only possible answer is, that though not made a *constitutional requirement*, the *Legislature* has the power to exact a bond, and that it is, in fact, required by the act of 1847, ch. 53, sec. 1, and we shall endeavor to show that this answer is not well made.

We admit that such an act, passed *since* the adoption of the constitution, would be *valid*, but no *such act has been passed.* The act of 1852, ch. 172, sec. 3, makes provision as to the oath to be taken by the State Librarian, and the fact that no provision has been made as to the *approval* of his bond, is a circumstance from which it may be inferred the legislature did not suppose he was required to give one, for they must have known that the Librarian might be entitled to enter upon the duties of his office in the recess of the General Assembly, *when there would be no committees on the Library* who could approve his bond according to the act of 1847.

But it may be said the 3rd article of the Bill of Rights settles the question. This article declares in effect that all acts in force on the first Monday of November 1850, shall remain in force, "*except such as may have since expired or may be altered by this constitution.*" And as the act of 1847 has not expired, and, as will be contended, is not "*altered*" by the constitution, the deduction will be that it applies to the State Librarian. Undoubtedly the whole question is involved in this point.

It is manifest that it would be wrong to adopt a strict or narrow construction of an important provision of a constitution.

The object should be to ascertain the sense in which the words used were employed by the framers of it. In doing this it is a safe guide to adopt the construction which "*common sense*" would declare the true one. To construe the words, "altered by this constitution," in the technical sense of a mere philologist would be absurd, for in a strict sense the constitution does not *alter* any acts of Assembly. It may be *repugnant* to some acts then in force, and in such cases they are of course *abrogated*, not *altered*. So cases may be shown in which, where there is no repugnancy, still by a change in relation to some matters of legislation the laws in force in November 1850, relating to such matters, cannot operate, because they are not applicable; and this may occur in some cases as to the whole of an act and in others as to some of its provisions. The true interpretation of the proviso then must be this: *all acts of Assembly in force on the first Monday of November* 1850, *shall remain in force, (subject to future amendment or repeal,) so far as those laws, according to the true meaning of those laws, expounded according to the intention of the Legislature that passed them, apply to the state of case existing under this constitution.* Any other construction would not carry into effect what, it seems to us, was the obvious meaning of the framers of the constitution. To illustrate:—if there was an act in force in 1850 which applied to the Librarian, and which upon its true construction applied to the *officer without regard to the manner of his appointment or election*, it would be applicable to the *State Librarian* elected under the constitution, and so as to any part or parts of any law or laws. Of this character are the laws which relate to the *duties* of the Librarian. But—and here is the result at which we aim—the provisions of acts then in force, which upon their true construction can apply *only* to the Librarian "appointed by the concurrent vote of the Senate and House of Delegates," cannot be made to apply to the Librarian elected under the constitution; and for this plain reason, that the intention of the law-makers who passed the act of 1847 must be the same *now* that it was when the law passed, and as at that time it

Marshall *vs.* Harwood.

could only have been construed as applying to a Librarian appointed in the mode prescribed in that act, it would be a wrong construction now to make it apply to a Librarian selected in a different manner. If the provision in this act, as to the approval of the bond, had been *general*, applying to the *officer, however selected*, it would apply to the present Librarian, but if as we read it, it can, in terms, apply *only* to the Librarian appointed as provided in that act, then it is doing violence to the constitution to make it applicable to a case for which it was never designed.

Now *who* is to give the bond mentioned in the act of 1847? The *"person"* appointed by the concurrent vote, &c. It is not a *general* provision applicable to the Librarian in all time to come, however selected. But the act of 1847 changed the mode of appointment from that provided by the act of 1826, ch. 53; and as to the law of 1826, which authorized the Executive to appoint, provided that the Librarian *so appointed*, previous to entering upon his duties, should give bond, approved by the Executive, so that of 1847 required the person appointed pursuant to its provisions to give a like bond, but to be approved in a different manner.

And it will not escape notice that unless we *amend* the act of 1847, so as to make it operate in an *amended form*, it cannot apply to the case. But the constitution does not propose to *amend* acts. They were left as they were found. The act of 1847 is now what it was on the first Monday of November 1850, and it means the same *now* that it meant on that day. Undoubtedly the constitution, if it had been so intended, could have directed that the form of bonds required to be given by existing laws should be still given, and that existing laws should be applicable to the officers under the provisions of the constitution, in like manner as if those laws were amended so as to be made in terms applicable. This course in an analogous case was pursued by the committee on the constitution in framing the act of 1836, ch. 197. As by that act the Executive Council was abolished and many of the existing laws applied to the "Governor and Council," it was declared

that all the powers vested in the Governor and Council should be exercised by the Governor alone. It is deemed unnecessary to dwell longer upon this point.

2nd. But if the court should think that the act of 1847 does apply to this officer, and that a bond is necessary, then we insist, that the bond prescribed by the 2nd, rather than that prescribed by the 1st section of that act, is the proper bond. The bond here given was such as is required by the 2nd section, and is conformable to that prescribed by the act of 1826, ch. 53.

3rd. But the appellee cannot make the objection. He himself gave bond in like manner. If the objection be well taken he is a mere intruder, "without the shadow of a legal title." The public, and not Mr. Harwood, is interested in the question, whether the bond approved by the Governor, whose duty it is to see that the laws are faithfully executed, is sufficient or insufficient? The acceptance of his bond and the Governor's certificate give him *a color of title*, and that is sufficient in such a case as this. 3 *Term Rep.*, 577, *King vs. Jotham.* 3 *Burr.*, 1265, *Rex vs. Barker, et al. Tapping's Mandamus*, 186, 297, 303. 4 *H. & McH.*, 429, *Runkel vs. Winemiller.* 7 *G. & J.*, 264, *Young vs. The State.* 9 *Geo. Rep.*, 314, *Governor vs. Howard, et al.*

4th. But Mr. Harwood is *estopped* from making this objection, having practically waived it in the former case, (5 *Md. Rep.*, 433,) by then resisting the pretensions of Mr. Marshall, solely on the ground that he was not duly *elected.* 1 *Md. Rep.*, 372, *Bradford vs. Jones.* 5 *Do.*, 64, *Bridendolph vs. Zellers.* 9 *G. & J.*, 15, *State vs. Harrison.* 33 *Eng. C. L. Rep.*, 90, *King vs. Nottingham Water Works Co.* 5 *Term Rep.*, 74, *King vs. Mayor, &c., of York.* 6 *Conn.*, 532, *Fuller vs. Plainfield Academic School. Tapping's Mandamus*, 302, 349.

*William Harwood* and *Thos. S. Alexander* for the appellee.

1st. The constitution, art. 7, sec. 7, provides, that the State Librarian shall be elected by the joint votes of the two houses of the Legislature; that he shall serve for the term of two years, and until his successor shall be elected and qualified,

and that he shall perform such duties as now are or shall be prescribed by law. It is clear from this last provision that the office of State Librarian is not of constitutional origin. It was known to the law anterior to the year 1851. Duties had been assigned to the incumbent of the office by pre-existing laws, and the constitution proposed to change merely the mode of appointment and tenure of office. Whatever difference may exist in name therefore, it may safely be assumed that the office of State Librarian is the office of Librarian, created originally by the act of 1826, ch. 53, and continued by that of 1847, ch. 53, and that these acts define the duties of the State Librarian. It is certain that the State Librarian first appointed under the constitution did in fact supersede the Librarian who had been appointed under the act of 1847. Assuming these facts, can it be doubted that the State Librarian is obliged before he enters upon the duties of his office to give bond in the manner and form as prescribed by the latter act?

We agree that there is nothing in the letter of the constitution which requires the State Librarian to give an official bond, neither is it required by the constitution that bonds shall be given by the clerks of the Court of Appeals and circuit courts; for all the laws made applicable to these officers by art. 4, sec. 16, are laws creating or defining *duties which pertain* to the different offices enumerated in the first class. But it is not to be doubted that the act of 1823, ch. 195, requiring official bonds to be given by these officers under the old constitution, and a renewal of them yearly, applies to the present clerks of the courts as now organized. Whether giving an official bond pertains to *duty* or to *qualification,* the acts requiring them from officials whose duties are now devolved substantially on others, extend to the incumbents of the offices newly created or reorganized. If the constitution had simply prescribed a new mode of appointment to office, it would operate as a repeal of so much of the pre-existing law as had prescribed a different mode, and so if its provisions had been limited to a change of tenure, it would repeal so

much of the pre-existing law as related to tenure.  If the antecedent law made provision as to the manner of appointment, the tenure of, the mode of qualification, and the duties attached to, the office, and the constitution affects to regulate only the mode of appointment and tenure, it must result that the antecedent law in relation to qualification and duty remains unaltered by the constitutional provision.  Upon general principles of construction, a repeal by implication or intendment is allowed so far only as may be necessary to prevent conflict between the precedent and subsequent laws.  But there is no necessary conflict between the constitutional provisions as to the mode of election and tenure of office of the State Librarian, and the prior statutory provisions in regard to his qualification and duties.  On the contrary, the same considerations of policy which induced the legislatures of 1826 and 1847 to require a bond from that officer, apply with equal force at the present time.

If the constitution repeals so much of the acts of 1826 and 1847, as require a bond to be given, this construction must rest upon the hypothesis that it embraces within its scope the entire subject of the office of Librarian, and that its affirmative provisions requiring an oath of office, for example, from the State Librarian, negative the intent to require a bond or other act of additional qualification.  On this hypothesis the Legislature could not now require a bond from this officer; for the very principle that requires us to imply an intent to repeal so much of former acts as relates to the bond, leads us necessarily to deny to the Legislature the power, at this time, to impose the duty of giving one.  Such an act now, would be just as inconsistent with the constitution as the old acts are supposed to be.  But can it be gravely argued, that a statute now enacted, requiring a bond, would be unconstitutional?  Prior to the constitutional act of 1836, ch. 224, the County Clerks were appointed *for life*, by the *Governor* and *Executive Council*.  The act of 1823, ch. 195, referred to these officers thus appointed and holding office for such term.  The act of 1836 transferred the power of appointment to the Governor,

by and with the advice and consent of the *Senate,* and reduced their tenure to *seven years.* But it is well known *as a fact,* that the Clerks appointed under the act of 1836, were always required to give bond, as directed by the act of 1823. It is submitted that two distinct cases cannot be imagined more similar, the one to the other.

2nd. Assuming that the provisions of the acts of 1826 and 1847, relating to the bond, were in force, the appellant gave a bond which was approved by the Governor. Had the Governor the authority to approve and accept this bond? This is the next, and, as we apprehend, the material question in the case.

This office, as we have said, was created by the act of 1826, ch. 53. The appointment of the officer was given to the Executive, and by *sec.* 3, he was required, before entering upon the duties of his office, to give bond *to the State* in *such sum* and with *such security* as the Executive should deem sufficient, and with *condition* as prescribed by the same section. The Executive was authorized to prescribe the *penalty* and approve the *security* to the bond.

The act of 1847 vests the power of appointment in the two Houses of the Legislature, to be exercised by concurrent votes, and provides that the bond shall be given in such *sum* and with such *security* as the committees of the two Houses on the Library shall approve, and with condition as prescribed by the act of 1826. The power of appointment is transferred from the Executive to the two Houses of the Legislature, and the authority to prescribe the penalty and approve the security to the bond is vested in the committees of the two Houses on the Library. Whence then does the Governor derive the authority to approve the bond? The grant to the Legislature of the power to appoint, is a denial of it to the Governor, and so the express grant to the committees of the authority to approve the bond, negatives the existence of any power of approval in the Governor. If any thing is wanting to confirm our construction of the unambiguous letter of the first section of this act, it is supplied by the provision made

by the second section, which gives, in *express terms*, to the Governor, the power to approve the bond given by a person whom he appoints to a *vacancy* during the recess of the Legislature.

3rd. The case of *Wayman vs. The State*, 2 G. & J., 254, is an answer to the first branch of the appellant's third point. A construction given to a clause in the constitution by the Executive in 1776, and continued for more than fifty years, and frequently acted on, was there held to possess no influence with the court, when called on to give the true construction to the constitution. Can it then be seriously contended that *one* act of inadvertence in reference to an office of recent creation, shall control the construction of a statute, the language of which is not susceptible of a plausible misconstruction? The question of construction is to be dealt with irrespective of the fact that Mr. Harwood's bond was submitted to the Governor for approval.

The second branch of this point supposes, that because, on our hypothesis, Harwood's title was originally as defective as Marshall's now is, the former ought to be turned out, and the latter inducted into office. This argument is equally unfounded in law and in logic. Invoking, as he does, a prerogative process to vindicate his supposed rights, he is bound to show a good title in himself, good against the present incumbent, and good against all the world, and especially good against the sovereign under whose authority he sues. It is *his* title, and not Harwood's, which is in issue. It is the duty of the court to see that the title which he relies on will, if established, in fact entitle him to retain the office against all gainsayers. Nor is it true that Harwood's predicament at this time, and Marshall's, are identical. Harwood is in office. He has, therefore, the color of title which enables him to defend his possession against any and every one who cannot show a *better* title. On the other hand, it cannot be affirmed that Marshall has any title or color of title, unless he shows that he has done all those acts which the law requires him to do, before he enters on the duties of the office. If the Gov-

ernor had no authority to approve the bond, his approval of Marshall's bond is a nugatory act, and the case stands in the same position, exactly, as if no bond had been given.

4th. The fourth point of the appellant supposes the appellee is estopped by the defences which he made on a former occasion. But the proceedings in that case form no part of the present record, nor can they be relied on for any of the purposes of this suit. The decision in that case was in Harwood's favor. He showed good cause against the application then made, and that cause thus ruled good, furnishes no reasonable evidence, by estoppel or otherwise, of the non-existence of other good objections to Marshall's title. Upon general principles, the omission of Harwood, in the former case, to rely on a defence resting *in pais*, would not preclude him from relying on such matter in the present case. But the case here is stronger, since it is shown as a part of the appellant's own case, that his title is not simply defective, but intrinsically bad. The suit, too, is not a suit purely of a civil character. But it is a suit effectively on the part of the public, or in which the public interests are involved, and there is no warrant for the assertion, that an applicant for office, who has, in fact, no title, can found title on the mispleading of a party in possession. It is, moreover, to be remarked, that if in the present case a *mandamus* should be awarded, it would go in the alternative, and Harwood would be at liberty to rely on new matter as cause why the peremptory *mandamus* should not be issued. And if his answer to the present rule would not estop him in the further proceedings which may be had in this case, it would be passing strange that such estoppel should be made out by his answer made on a former occasion to a former rule which had been discharged as untenable. It is to be observed, likewise, that the title of the appellant, set up on the first occasion, is different from that relied on at this time, and if the rule of estoppel is to be admitted, there can be no reason wherefore Marshall should not suffer from its operation. To the title formerly set up, Harwood made a defence,

61    v.7

which was adjudged valid. Marshall now claims to set up a new title. If this privilege is conceded to him, will there be any equality in the distribution of justice between the parties, if Harwood is precluded from the privilege of setting up a new defence to such new title?

(The argument on the other points decided in favor of the appellant by the court below is omitted, as no decision was pronounced upon them by this court.)

ECCLESTON, J., delivered the opinion of this court.

In the court below the application for a *mandamus* was opposed by the respondent upon three grounds.

The first related to the form of the certificate of qualification in regard to the oath of office.

The second denied that the oath had been taken in proper time.

Both of these were decided in favor of the petitioner, and we do not consider them before us on his appeal, inasmuch as we approve of the refusal to order the *mandamus*, on account of the third objection, which relates to the bond alone.

This objection is, that the bond was approved by the Governor, whereas its approval should have been by the committees of the Senate and House of Representatives on the Library.

For the reasons assigned by the judge on this point, we think he was right in refusing to issue the *mandamus*. But to avoid misapprehension from this approval of the reasoning of the judge below, we deem it proper to say, that, in our opinion, the bond of the petitioner could not be legally approved by the committees on the Library, except during the session of the Legislature. Committees have no power to act as such during the recess of the Legislature, unless they are authorized specially to do so. In the case before us, there does not appear any authority of the committee on the Library to act during the recess.

When this case was before us at a previous term, (5 *Md.*

*Rep.*,) the question now determined was not presented for our consideration.

*Judgment affirmed.*